EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Juan R. Raimundi Meléndez Recurrido  v.  Productora de Agregados Inc. Peticionaria  Comisión de Servicio Público Agencia-recurrida | Certiorari  2004 TSPR 106  161 DPR \_\_\_\_ |

Número del Caso: CC-1997-652

Fecha: 21 de junio de 2004

Tribunal de Circuito de Apelaciones:

Circuito Regional de Bayamón

Juez Ponente:

Hon. José E. Broco Oliveras

Abogados de la Parte Peticionaria:

Lcdo. Pedro E. Ortiz Álvarez
Lcdo. Carlos Berreteaga
Lcdo. Jorge C. Pizarro García
Lcdo. Gerardo Fernández Amy
Lcdo. Jaime L. Vázquez Bernier

Abogados de la Parte Recurrida:

Lcda. Wanda I. Soler Fernández
Lcdo. Edgar A. Albelo Matos

Asociación de Industriales de Puerto Rico:

Lcdo. Roberto E. Berríos Falcón

Materia: Revisión de Decisión Administrativa de la Comisión de Servicio Público

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan R. Raimundi Meléndez

    Recurrido

       vs.

                          CC-1997-652     CERTIORARI

Productora de Agregados Inc.

    Peticionaria

Comisión de Servicio Público

    Agencia-recurrida

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 21 de junio de 2004

El 27 de enero de 1997, el señor Juan R. Raimundi Meléndez presentó ante la Comisión de Servicio Público de Puerto Rico una querella contra la cantera Productora de Agregados Inc.[1] En síntesis, alegó que desde el 23 de enero de 1997 Productora le ha estado prohibiendo la entrada a los terrenos de la cantera impidiendo que éste pueda recoger la mercancía de sus clientes. En vista de ello solicitó de la Comisión que emitiera una orden de cese y desista en contra de la querellada. Además, solicitó que

---

[1] Esta última es dueña de una cantera dedicada a la venta de agregados.

se le indemnizara, a razón de $1,800.00 diarios, por los daños y perjuicios causados a raíz de la prohibición.

Por su parte, Productora presentó una moción de desestimación donde alegó falta de jurisdicción sobre la persona y la materia objeto del litigio. En primer lugar, alegó que nunca ha sido concesionaria de la Comisión y que nunca ha tenido relación contractual alguna con el querellante por lo que la Comisión no tiene autoridad alguna sobre ella. En cuanto al argumento de falta de jurisdicción sobre la materia adujo que la ley habilitadora de la Comisión de Servicio Público no extiende el alcance de sus facultades a reglamentar la forma y manera en que una entidad privada --no concesionaria-- conduce sus negocios.

Luego de varios incidentes procesales, el 7 de marzo de 1997, la Comisión de Servicio Público emitió una resolución ordenándole a Productora que cesara en su pretensión de negarle acceso a Raimundi a los predios de su cantera. Además, ordenó el pago de una indemnización ascendente a cuarenta y siete mil seiscientos dólares ($47,600.00) en compensación por los daños y perjuicios alegadamente sufridos. Al descartar el argumento de falta de jurisdicción levantado por Productora, la Comisión --citando lo dispuesto en el Artículo 14(c) de la Ley de Servicio Público de Puerto Rico, 27 L.P.R.A. sec. 1101-- señaló:

La Comisión no solamente reglamenta y fiscaliza las empresas de servicio público que operen en Puerto Rico[,] sino que también interviene para resolver controversias entre dichas empresas y sus usuarios, entre concesionarios y entre concesionarios y particulares cuyas actuaciones afecten o pueda [sic] afectar las actividades bajo nuestra jurisdicción.

El legislador creyó necesario[,] mediante la promulgación de la Ley 104 de 27 de julio de 1974, el Artículo 14 de la Ley de Servicio Público de Puerto Rico, para incluir bajo la jurisdicción de la Comisión a cualquier persona o entidad cuyas actuaciones afecten o puedan afectar la prestación de algún servicio público, tal y como trata en el caso de autos.

Insatisfecha con la determinación de la Comisión, Productora acudió ante el Tribunal de Apelaciones mediante recurso de revisión. En síntesis, alegó que incidió la Comisión de Servicio Público al asumir jurisdicción sobre una materia que trasciende los poderes delegados por la Asamblea Legislativa. Adujo que ninguna disposición de la Ley de Servicio Público, ni de su Reglamento, autoriza a la Comisión a ordenarle a una compañía como la suya que garantice el acceso de un transportista a los predios de una cantera privada.

Mediante resolución a esos efectos, el foro apelativo intermedio confirmó el dictamen recurrido. En síntesis, y en lo aquí pertinente, resolvió que siendo la Comisión el organismo gubernamental designado para determinar quién puede dedicarse al acarreo de agregados, y para regular esta industria, es dicha entidad la única que puede impedir que uno de sus concesionarios pueda brindar el

referido servicio público. Al igual que la Comisión, el tribunal apelativo intermedio fundamentó su determinación --de manera principal-- en lo dispuesto en el Artículo 14(c) de la Ley de Servicio Público de Puerto Rico.[2]

Inconforme con la actuación del Tribunal de Apelaciones, Productora recurrió, oportunamente, ante este Tribunal --vía *certiorari*-- imputándole al foro apelativo intermedio, en síntesis y en lo pertinente, haber errado al concluir que la Comisión de Servicio Público tenía jurisdicción para resolver la querella presentada en el caso de autos.

Expedimos el recurso. Contando con las comparecencias de todas las partes y estando en condición de resolver el mismo, procedemos a así hacerlo.[3]

I

El Artículo 14 de la Ley de Servicio Público de Puerto Rico, 27 L.P.R.A. sec. 1101, enumera los poderes y facultades generales de la Comisión de Servicio Público. A esos efectos, la referida disposición estatutaria establece, en sus Incisos (a) y (b), que la Comisión

---

[2] Además, citó lo dispuesto en el Reglamento de la Comisión de Servicio Público Núm. 1817 de 20 de agosto de 1974, mejor conocido como Reglamento de Carga de Agregados, al referirse a la prohibición de discrimen contra porteadores públicos cubiertos por dicho Reglamento.

[3] Por su parte, la Asociación de Industriales de Puerto Rico presentó moción solicitando comparecer como *amicus curiae*, lo cual le fue concedido.

tendrá facultad para: (i) otorgar toda autorización de carácter público para cuyo otorgamiento no se haya fijado otro procedimiento de ley;[4] (ii) reglamentar las empresas de vehículos privados dedicados al comercio;[5] (iii) otorgar autorizaciones para el transporte público; (iv) imponer multas administrativas y otras sanciones administrativas al amparo de la Ley de Servicio Público; (v) conducir investigaciones e intervenciones; (vi) exigir cualquier clase de información que sea necesaria para el adecuado cumplimiento de sus facultades; (vii) ordenar o solicitar a los tribunales que ordenen el cese de actividades o actos al amparo de la sec. 1262,[6] de la sec. 1262a[7] o de

---

[4] Incluyendo el derecho de usar o cruzar a nivel, sobre nivel o bajo nivel las vías públicas o cauces de aguas públicas y para reglamentar las compañías de servicio público y porteadores por contrato, incluyendo asignar los vehículos públicos que utilizarán los lugares de aparcamiento (terminales) que para los transportistas de pasajeros provean las legislaturas municipales o el Departamento de Transportación y Obras Públicas.

[5] Específicamente el aspecto relacionado con la seguridad de los mismos.

[6] Esta Sección provee para que la Comisión realice enmiendas, suspensiones y revocaciones de decisiones y autorizaciones previamente emitidas.

[7] Esta Sección dispone, en su parte pertinente que:

(a) Cualquier funcionario o agente debidamente autorizado de la Comisión de Servicio Público podrá presentar ante cualquier juez de Tribunal de Primera Instancia de Puerto Rico una petición jurada, alegando que la compañía de servicio público o entidad actuando como compañía de servicio público a que se refiere la petición no le está dando cumplimiento a las disposiciones de esta Parte y/o de las reglas y reglamentos

(Continúa . . .)

cualquier otra disposición de la Ley de Servicio Público; (viii) imponer y ordenar el pago de costas, gastos y honorarios de abogado;[8] y (ix) ordenar que se realice cualquier acto en cumplimiento de las disposiciones de la mencionada Ley.

Por otro lado, el Inciso (c) de este Artículo 14 dispone que los poderes y facultades, enumerados en los Incisos (a) y (b), serán ejercitables no solamente en relación con las compañías de servicio público, porteadores por contrato, empresas de vehículos privados dedicados al comercio, personas que se dediquen al transporte turístico y entidades que actúen como compañías de servicio público o como porteadores por contrato, sino también con respecto a:

> (1) Toda persona o entidad que infrinja las disposiciones de [la Ley].

---

aprobados en virtud de las mismas o a las de cualquier ley, regla y reglamento relacionado con la protección de la vida, salud, seguridad y bienestar del público en general especificando los actos u omisiones constitucionales [sic] de dicha violación y señalando las personas responsables de los mismos. El tribunal expedirá una orden provisional dirigida a dichas personas requiriéndoles para que paralicen toda actividad bajo apercibimiento de desacato, en relación con los cuales subsisten las condiciones señaladas en la petición, hasta tanto se ventile judicialmente su derecho.

[8] Así como el pago de gastos y honorarios por otros servicios profesionales y consultivos incurridos en las investigaciones, audiencias y procedimientos ante la Comisión.

(2) Toda persona o entidad cuyas actuaciones afecten o puedan afectar la prestación de algún servicio público.

(3) Toda persona o entidad que lleve a cabo cualquier actividad para la cual sea necesario obtener una autorización o endoso de la Comisión.

(4) Toda persona o entidad cuyas actuaciones u omisiones resulten en perjuicio de las actividades, recursos o intereses en relación con los cuales la Comisión tiene poderes de reglamentación, supervisión o vigilancia.

En ocasión de recomendar la aprobación del Sustitutivo del P. de la C. 1226, convertido luego en la Ley Núm. 60 de 31 de mayo de 1972, el representante Agrait Rivera Cintrón, actuando en su capacidad de Presidente de la Comisión de Gobierno de la Cámara de Representantes, señaló que uno de los propósitos de la medida era "consagrar claramente en la ley, la facultad de la Comisión de Servicio Público para intervenir con personas, que aunque no presten servicios públicos, incurren en prácticas o actuaciones que afectan adversamente los servicios públicos."[9] Añadió el mencionado legislador que la inclusión de estas personas a la jurisdicción de la Comisión de Servicio Público, "permitir[á] a esta Agencia bregar más efectivamente con las materias que caen bajo su jurisdicción." (énfasis suplido).

---

[9] Véase: Informe de la Comisión de Gobierno de la Cámara de Representantes de Puerto Rico de 9 de febrero de 1972 sobre Alcance del Sustitutivo del P. de la C. 1226, pág. 2.

Como vemos, las facultades o poderes que puede ejercer la Comisión con relación a personas o entidades que no sean compañías de servicio público o porteadores por contrato no son absolutos ni ilimitados. Los mismos se circunscriben a los enumerados en los Incisos (a) y (b) del Artículo 14 de la Ley. Esto es, en aquellos casos en que la Comisión determine que las actuaciones u omisiones de una persona o entidad privada están afectando la prestación de un servicio público, ésta podrá asumir jurisdicción sobre la misma pero sólo para ejercitar las facultades expresamente establecidas en los referidos Incisos (a) y (b).

En lo pertinente al asunto ante nuestra consideración, el Inciso (b) de este Artículo 14 faculta a la Comisión a emitir ciertas órdenes en cuanto a personas o entidades privadas. Específicamente se autoriza a la Comisión a ordenar --o solicitar a los tribunales que ordenen-- el cese de actividades o actos al amparo de las secciones 1262 y 1262a o de cualquier otra disposición de la Ley de Servicio Público y a ordenar la realización de cualquier acto en cumplimiento de las disposiciones de la mencionada Ley.

Vemos, pues, que en lo que respecta a personas o entidades privadas, la Ley no autoriza a la Comisión a emitir cualquier tipo de orden, sino sólo aquellas que sean necesarias para hacer cumplir alguna de las disposiciones expresamente establecida en la propia Ley.

Ello, simple y sencillamente, significa que, con relación a estas personas, la Comisión de Servicio Público no puede emitir órdenes para hacer cumplir obligaciones que no hayan sido expresamente estatuidas en su ley habilitadora.

En ese sentido, es importante señalar que ninguna de las disposiciones de la Ley de Servicio Público provee para que la Comisión pueda imponerle a una empresa privada la obligación de recibir en sus predios a cualquier transportista con licencia de la Comisión de Servicio Público. Tampoco existe en la Ley, ni en su Reglamento, ninguna disposición que obligue a una empresa privada a desarrollar o mantener relaciones de negocios con cualquier transportista por el solo hecho de que se trate de un porteador público autorizado.[10]

Resulta, pues, evidente que estamos ante un caso en que ni la letra ni el historial legislativo de la Ley demuestran que la Asamblea Legislativa tenía la intención de conferirle a la Comisión un poder absoluto sobre personas o entidades privadas por el simple hecho de que sus actuaciones pudieran afectar la prestación de algún

---

[10] En lo que respecta al argumento esgrimido por el foro apelativo intermedio en torno a lo dispuesto en el Reglamento de Carga de Agregados, bástanos con señalar que la Ley de Transporte y Carga de Agregados, Ley Núm. 1 de 16 de mayo de 1972, 27 L.P.R.A. sec. 2002 et seq., no contiene disposición alguna que confiera jurisdicción a la Comisión sobre entidades o empresas privadas. Es más, en su Artículo 2, 27 L.P.R.A. sec. 2002, esta Ley limita la jurisdicción de la Comisión a "la actividad de transportación o carga de agregados por vías públicas...."

servicio público.[11] En estas circunstancias, es claro que ni la Comisión ni los tribunales pueden ampliar las "facultades o poderes" que con relación a estas personas pretendió conceder la Asamblea Legislativa.

Resulta importante señalar que, en lo referente al asunto ante nuestra consideración, hemos establecido que en el ámbito administrativo, al igual que en el foro judicial, no existe discreción para asumir jurisdicción donde no la hay. Véase: Maldonado v. Pichardo, 104 D.P.R. 778 (1976). Conforme nuestro estado de derecho, las agencias administrativas sólo tienen los poderes otorgados expresamente por su ley habilitadora y aquellos que sean indispensables para llevar a cabo los conferidos. Caribe Communications, Inc. v. Puerto Rico Telephone, 2002 T.S.P.R. 83; véase, además: Com. Vec. Pro-Mej., Inc. v. J.P., 147 D.P.R. 750, 762 n. 24 (1999); P.S.P. v. Com. Estatal de Elecciones, 110 D.P.R. 400 (1980); Infante v. Tribunal Examinador Médicos, 84 D.P.R. 308 (1961).

A tono con lo anterior, hemos precisado que una agencia administrativa no puede asumir jurisdicción sobre situación alguna que no esté autorizada por ley; es decir, ni la necesidad, ni la utilidad, ni la conveniencia pueden

---

[11] Todo lo contrario, una simple lectura de la Ley evidencia que el hecho de que se esté afectando un servicio público a lo único que da acceso es a las facultades expresamente enumeradas en el estatuto aquí en cuestión.

sustituir al estatuto en cuanto a fuente de poder de una agencia administrativa.[12] <u>Es por ello que cualquier duda en cuanto a la existencia de dicho poder debe resolverse en contra del ejercicio del mismo</u>.

Bajo ese tenor, en <u>P.R. Lighterage Co.</u> v. <u>Caribe Tugboat Corp.</u>, 111 D.P.R. 686, 691-92 (1981), fuimos <u>enfáticos</u> al resolver que "[l]a Comisión de Servicio Público no puede asumir jurisdicción sobre clase alguna de actividad que no esté claramente autorizada por ley para ello." Tratándose de una criatura de la Legislatura, los actos u órdenes que trascienden lo dispuesto en su ley habilitadora no sólo son erróneos, sino también nulos.[13]

En virtud de lo antes expuesto, forzoso es concluir que en el presente caso la Ley de Servicio Público <u>no faculta a la Comisión a ordenarle a la peticionaria, Productora de Agregados Inc., que cese en su negativa de darle acceso a Raimundi Meléndez a su cantera</u>. Una correcta interpretación y aplicación de nuestro ordenamiento jurídico no puede llevarnos a otra conclusión. Resolver lo contrario, necesariamente

---

[12] Véase: 64 American Jurisprudence 2d, sec. 146, pág. 548; XLIV Op. Sec. Just. Núm. 1973- 37, págs. 194-95 (1973).

[13] Véase: <u>Caribe Communications, Inc.</u> v. <u>Puerto Rico Telephone Co.</u>, res. el 18 de junio de 2002, 2002 T.S.P.R. 83; <u>Ramos Acevedo</u> v. <u>Municipio de Aguadilla</u>, res. el 11 de abril de 2000, 2000 T.S.P.R. 52; <u>Arrow Transportation Co.</u> v. <u>Idaho Public Utilities Commission</u>, 379 P.2d 422 (1969); <u>People ex rel. Illinois Highway Transportation Co.</u> v. <u>Biggs</u>, 84 N.E.2d 372 (1949).

implicaría la creación de una "super Comisión" que tendría la facultad de asumir jurisdicción en cuanto a cualquier tipo de empresa o persona privada con el fin de emitir órdenes de todo tipo imaginable.[14] Ello no sólo es contrario a nuestro ordenamiento jurídico, sino que, además, constituiría un precedente sumamente peligroso, pues, en la gran mayoría de las ocasiones, la Comisión estaría adjudicando asuntos que están fuera de su jurisdicción y su "expertise".[15]

II

Por último, debemos señalar que lo expresado en el acápite que antecede aplica, en toda su extensión, al asunto concerniente a la facultad de la Comisión de Servicio Público para imponerle a una empresa o entidad

---

[14] A nuestro juicio el error que comete el foro apelativo intermedio al resolver el presente recurso se debe principalmente a que, al analizar lo referente a la jurisdicción de la Comisión, se limita exclusivamente a evaluar el asunto de si la prohibición de acceso a la cantera afecta o no la prestación de un servicio público. Al así actuar el referido foro ignora por completo el hecho de que esta circunstancia sólo abre las puertas para que la Comisión pueda ejercitar --en cuanto a personas y entidades privadas-- los poderes y facultades dispuestos en los incisos (a) y (b) del Artículo 14, ante.

[15] Debe quedar claro que nuestro disenso no versa sobre la corrección o incorrección de la orden emitida, sino sobre la facultad de la Comisión de Servicio Público para emitir la misma. Entendemos que un asunto de este tipo, que no requiere en absoluto del conocimiento experto de la Comisión, debe ser dilucidado por los tribunales de justicia, quienes obviamente están mejor facultados para dirimir el mismo.

privada la obligación de compensar por daños y perjuicios.
No hemos encontrado ninguna disposición en la Ley de
Servicio Público que pueda razonablemente ser interpretada
en ese sentido. Los Incisos (a) y (b) del Artículo 14,
ante, tampoco permiten la imposición de tales daños.

Con relación a este asunto, el foro apelativo
intermedio --posición erróneamente avalada por la Opinión
disidente-- apoyó su conclusión en lo dispuesto en el
Artículo 20 de la Ley de Servicio Público, 27 L.P.R.A.
sec. 1107(a), el cual dispone:

> (a) Cuando la Comisión, luego de celebrada
> audiencia determinare que cualquiera tarifa
> cobrada, acto realizado u omitido, o práctica
> puesta en vigor ha infringido cualquier orden,
> fuere injusta o irrazonable, estableciere
> diferencias o preferencias injustificadas o
> indebidas o que la tarifa cobrada excede la
> radicada, publicada y vigente a la fecha en que
> se prestó el servicio, podrá ordenar a la
> compañía de servicio público o porteador por
> contrato que pague al perjudicado, dentro del
> tiempo razonable que se especifique, el importe
> de los daños y perjuicios sufridos como
> resultado de la tarifa, acto, omisión o práctica
> injusta, irrazonable o ilegal. La orden que a
> ese efecto se expida contendrá conclusiones de
> hechos y la cuantía que ha de pagarse.

En ocasión de interpretar la referida disposición
estatutaria, en Vera v. Pavesi, 116 D.P.R. 55, 58 (1985),
este Tribunal señaló que:

> Somos del criterio que dicho precepto legal
> faculta a la Comisión de Servicio Público a
> conceder indemnización monetaria a un usuario de
> una compañía de servicio público, o porteador
> por contrato, únicamente en aquellos casos en
> que éste se ve afectado o sufre daños: 1-- al
> ser 'víctima' de una tarifa, práctica puesta en
> vigor, acto, u omisión que (a) infrinja

cualquier orden de la Comisión, o (b) resulta injusta o irrazonable, o (c) establece diferencias o preferencias injustificadas o indebidas, y 2-- cuando le es cobrada una tarifa que excede la radicada, publicada y vigente a la fecha en que se prestó el servicio. (énfasis suplido).

Asimismo, en Quiñones v. San Rafael Estates, S.E., 143 D.P.R. 756, 765 (1997), señalamos que "la Comisión de Servicio Público está expresamente facultada para ordenar a las compañías de servicio público o a porteadores por contrato el pago por los daños y perjuicios sufridos como resultado de una práctica irrazonable o ilegal." (énfasis suplido).

Como vemos, esta disposición estatutaria provee sólo para que la Comisión pueda conceder indemnización a aquellos usuarios que se vean afectados por ciertas prácticas realizadas por los concesionarios. Esto es, a tenor con lo establecido en esta disposición estatutaria, la posibilidad de que la Comisión pueda adjudicar daños se produce sólo cuando la querella es dirigida contra la industria regulada. Contrario a lo anterior, en el presente caso el foro apelativo intermedio, y la minoría, avalan un dictamen donde se conceden daños no en contra, sino a favor de la industria regulada y, peor aún, donde la obligación de indemnizar se le impone a una empresa no sujeta a la regulación de la Comisión.

Por otro lado, somos del criterio que en el presente caso tampoco procede hablar de que la concesión de daños

sea un remedio "necesario y apropiado" para que la Comisión pueda efectuar los propósitos de su ley orgánica. Tampoco procede argumentar que se trata de un asunto implícitamente delegado que adelante o tenga relación directa y sustancial con los propósitos de la Ley.[16] Ello cuando consideramos que estamos ante un patente caso de trasgresión del ámbito del poder delegado, donde cualquier actuación por parte de la Comisión sería *ultra vires* y, por ende, nula. Cualquier interpretación en contrario constituiría un simple acto de "legislación judicial" que tendría el efecto de soslayar los más elementales principios de hermenéutica.[17]

III

En vista de lo anteriormente expresado, forzoso resulta concluir que en el presente caso la Comisión de

---

[16] Véase: Caribe Communications, Inc. v. Puerto Rico Telephone Co., res. el 18 de junio de 2002, 2002 T.S.P.R. 83; Quiñones Irizarry v. San Rafael Estates, 143 D.P.R. 756 (1997); U.T.I.E.R. v. J.R.T., 99 D.P.R. 512 (1970).

[17] Como es sabido, el Artículo 14 de nuestro Código Civil, 31 L.P.R.A. sec. 14, dispone que cuando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada. "Cuando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa". Alejandro Rivera v. E.L.A., 140 D.P.R. 538, 545 (1996). "Interpretar una ley en forma que sea contraria a la intención del legislador implica la usurpación por la rama judicial de las prerrogativas de la rama legislativa. Por tanto, el intérprete debe abstenerse de sustituir el criterio legislativo por sus propios conceptos de lo justo, razonable y deseable". *Ibid.*

Servicio Público <u>no</u> tiene facultad en ley <u>ni</u> para emitir la orden de cese y desista aquí en controversia <u>ni</u> para imponerle a una empresa privada la obligación de indemnizar por daños y perjuicios.[18]

En mérito de lo antes expuesto, procede <u>revocar</u> el dictamen emitido por el Tribunal de Apelaciones en el presente caso.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[18] Coincidimos con la peticionaria en cuanto a que en el presente caso podrían proceder otras reclamaciones --siempre que el Derecho sustantivo así las contemple-- <u>pero éstas sólo podrían ser ejercitadas en el escenario tradicional de los tribunales de justicia.</u>

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Juan R. Raimundi Meléndez

 Recurrido

  vs.

            CC-1997-652  CERTIORARI

Productora de Agregados Inc.

 Peticionaria

Comisión de Servicio Público

 Agencia-recurrida


SENTENCIA

San Juan, Puerto Rico, a 21 de junio de 2004


 Por los fundamentos expuestos en la Opinión que antecede, la cual se formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida por el Tribunal de Apelaciones en el presente caso.

 Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió Opinión disidente. La Juez Presidenta señora Naveira Merly y la Juez Asociada señora Fiol Matta están de acuerdo con los fundamentos legales expuestos en la Opinión disidente emitida por el Juez Asociado señor Fuster Berlingeri.


      Patricia Otón Olivieri
     Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan R. Raimundi Meléndez

    Peticionario

      vs.                    CC-1997-652    Certiorari

Productora de Agregados Inc.

    Recurrido

Opinión Disidente emitida por el JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI.

San Juan, Puerto Rico, a 21 de junio de 2004.

> "El derecho a un empleo, esto es, a devengar ingresos y a tener una vida justa y decente, es un principio inalienable al hombre. . ." <u>Amy v. Adm. Deporte Hípico</u>, 116 D.P.R. 414 (1985).

En el caso de autos una mayoría del Tribunal decreta que la Comisión de Servicio Público (la Comisión) carece de facultad para ordenarle a un negocio de ventas de agregados que cese y desista de impedirle acceso a sus predios a un porteador público autorizado por la Comisión precisamente a transportar agregados como los que vende el negocio aludido.

El referido decreto de una mayoría del Tribunal no sólo carece totalmente de base jurídica alguna, sino que es contrario a claras normas del ordenamiento jurídico. Además, dicho decreto socava una vertiente importante del entramado del derecho administrativo en el país. Constituye también una grave injusticia contra un modesto trabajador y una decisión de privilegio a favor de una poderosa empresa privada. Por todo ello, disiento. Veamos.


I


Conviene comenzar precisando los hechos del caso. **La mayoría del Tribunal no los narra completamente** en su decreto, sacando de foco así lo que concretamente nos concierne aquí.

La peticionaria, Productora de Agregados, Inc. (en adelante Productora,) es la dueña de una cantera dedicada a la venta de agregados[19]. Juan R. Raimundi Meléndez (en adelante Raimundi) es un concesionario autorizado por la Comisión de Servicio Público para la carga y transporte de agregados en Puerto Rico.

Los clientes de Raimundi compraban agregados a Productora y utilizaban los servicios de Raimundi para transportar dichos agregados desde la cantera de Productora hasta sus propios predios. Raimundi había realizado las

---

[19]"Agregados" incluye tierra, barro, lodo, zahorria, babote, arena, mezcla asfáltica, piedra en bruto o triturada o cualquier otra materia análoga. Reglamento de Carga de Agregados, Núm. 1817, Artículo 2 (b).

labores de transporte aludida por espacio de veinte años, **y se había dedicado durante ese tiempo casi exclusivamente a transportar precisamente los agregados de Productora**. Los servicios prestados por Raimundi a Productora, pues, constituían por décadas su principal fuente de ingresos.

Desde el 23 de enero de 1997, Productora prohibió a Raimundi la entrada a su cantera por razón de alegados altercados de sus empleados con dicho porteador. **Debido a la prohibición referida, Raimundi prácticamente no había podido operar sus camiones ni realizar su negocio de transportación**. La prohibición de Productora resultó tan adversa a su modo de ganarse la vida que Raimundi llegó a considerar la idea de **vender uno de sus camiones** para poder sostener a su familia, según lo determinó la Comisión en una de las determinaciones de hecho que hizo en su Resolución en este caso. Por ello, Raimundi presentó una querella ante la Comisión, mediante la cual solicitó que se le ordenara a Productora a cesar y desistir de impedirle el acceso a la cantera. También solicitó que se le indemnizara por los daños sufridos resultantes de la referida prohibición.

Productora contestó la querella y solicitó su desestimación. Adujo, en esencia, que la Comisión no tenía jurisdicción para atender la controversia referida. Planteó que la jurisdicción de la Comisión sobre el porteador público no la autorizaba a regular a quien la cantera le podía vender sus agregados. Alegó que la acción de la Comisión aquí constituía una expansión de sus poderes sobre asuntos que no le competen.

Luego de varios incidentes procesales, la Comisión se negó a desestimar la querella en cuestión y determinó que el Artículo 14

(c) de la Ley 109 de 28 de junio de 1962, la "Ley de Servicio Público", le daba jurisdicción sobre Productora. Emitió una resolución mediante la cuál ordenó a la peticionaria que cesara de negar acceso a Raimundi a la cantera, y ordenó el pago de una compensación por los daños sufridos por éste.

Inconforme con dicho dictamen, Productora acudió al entonces Tribunal de Circuito de Apelaciones mediante un recurso de revisión. El foro apelativo correctamente confirmó la resolución de la Comisión. Denegada la reconsideración de ese dictamen, Productora acudió ante nos. Inicialmente **denegamos el recurso de Productora, por carecer de méritos. Denegamos así mismo la primera moción de reconsideración de Productora**. Sin embargo, al atender su segunda moción de reconsideración, decidimos examinar más a fondo sus planteamientos por lo que expedimos el recurso solicitado, y autorizamos la intervención de la Asociación de Industriales de Puerto Rico como *Amicus Curiae*.


II

El asunto medular ante nuestra consideración es si la Comisión de Servicio Público tiene facultad para intervenir con una cantera que le ha negado acceso a sus predios a un porteador público autorizado por tal Comisión a transportar precisamente agregados como los que vende la cantera en cuestión.

Nótese, de entrada, que la Comisión al emitir la orden de cese y desista del caso de autos examinó de manera deliberada la cuestión de si tenía facultad para intervenir en este asunto, ya que Productora se lo planteó enfáticamente. La Comisión determinó expresamente que tenía tal facultad al amparo de lo dispuesto en

el Art. 14 de la Ley de Servicio Público. Ello es importante en vista de la conocida doctrina de que los tribunales le deben gran deferencia y respeto a las interpretaciones que las agencias administrativas hacen de sus propias leyes orgánicas. Reiteradamente hemos resuelto que la interpretación administrativa de una ley por el organismo encargado de ponerla en vigor y velar porque sus fines se cumplan merece gran peso y deferencia judicial. Secretario D.A.C.O. v. Jta. Condómines, 127 D.P.R. 807 (1988); Asociación Médica de P.R. v. Cruz Azul, 118 D.P.R. 669 (1987); A.R.P.E. v. Ozores Pérez, 116 D.P.R. 816 (1986); Tormos & D.A.C.O. v. F.R. Technology, 116 D.P.R. 153 (1985); M & V Orthodontics v. Negdo. Seg. Empleo, 115 D.P.R. 183 (1984). Este postulado básico de derecho administrativo es totalmente ignorado por la mayoría del Tribunal en el caso de autos, en su afán por defender los intereses de la empresa privada.

III

La referida decisión de la Comisión, más aun, está firmemente anclada en lo que claramente dispone la Ley de Servicio Público de Puerto Rico, Ley número 109 del 28 de junio de 1962, según enmendada, 27 L.P.R.A. secs. 1001 et seq. (en adelante la Ley).

El Artículo 14 de la Ley enumera los poderes y deberes de la Comisión. En su origen, dicho artículo era de aplicación sólo a los porteadores por contrato, las compañías de servicio público y las entidades que actuaren como compañías de servicio público. Sin embargo, en **1972** se enmendó la Ley para adicionar un inciso (b) a su Artículo 14, con el fin de dejar claramente establecido

no solo que la Comisión de Servicio Público tenía las facultades generales que usualmente ejerce un organismo cuasi-judicial, si no además que la Comisión tenía facultad para **intervenir con personas que incurriesen en prácticas o actuaciones que afectaran adversamente los servicios públicos, aunque tales personas no fuesen compañías de servicios públicos o concesionarios de la Comisión.** Informe Comisión de Gobierno sobre el P. de la C. 1226 del 9 de febrero de 1972, 6ta Asamblea Legislativa, 4ta Sesión Ordinaria.

Es evidente que el legislador creyó necesario **ampliar** las facultades de la Comisión para otorgarle jurisdicción no solamente sobre las empresas de servicio público que operan en Puerto Rico sino también para que pudiese intervenir para resolver controversias entre tales empresas y terceros en casos en que las actuaciones de éstos pudiesen afectar las actividades de las empresas de servicio público.

Más aun, el 27 de junio de 1974 se enmendó otra vez el referido Artículo 14 de la Ley, a fin de aclarar la enmienda del 1972. En el Informe de la Cámara de Representantes sobre el **alcance** de esta nueva enmienda de 1974 se señaló lo siguiente:

> "Mediante la Ley Núm. 60, de 30 de mayo de 1972, se enmendó el Art. 14 de la Ley de Servicio Público, a los fines de conceder jurisdicción a la Comisión de Servicio Público para intervenir con personas y empresas que pudieran afectar adversamente la prestación de los servicios públicos en Puerto Rico y la eficiente implementación de dicha Ley. **La enmienda se fundamentaba en el hecho de que a la Comisión . . . le era indispensable no sólo tener la facultad de intervenir efectivamente con las personas que prestan servicios públicos, sino también con aquellas que aunque no prestan un servicio público incurren en prácticas y actuaciones que afectan adversamente a dichos servicios**. . . (Énfasis suplido)

Así mismo, en la Exposición de Motivos de la enmienda de 1974 se resaltó su propósito de hacer claro que al adoptar la enmienda del 1972 se le concedió autoridad a la Comisión para ejercer todas sus facultades con relación a actuaciones de personas o entidades **que no son empresas de servicio público o porteadores por contrato** pero que afectan sus actividades. La referida exposición de motivos lee como sigue:

> **A los fines de conceder jurisdicción a la Comisión de Servicio Público <u>para intervenir con personas y empresas que pudiesen afectar adversamente la prestación de los servicios públicos</u>, con miras a aclarar que al adoptar la Ley número 60 del 30 de mayo de 1972 concedimos autoridad a la Comisión para ejercer todas sus facultades y no tan sólo las contenidas en el inciso (b) <u>en relación a las personas o entidades enumeradas en dicha ley que no son empresas de servicio público o porteadores por contrato</u>** (Enfasis suplido).

Exposición de Motivos de la Ley Núm. 104 del 27 de junio de 1974, Leyes de Puerto Rico de 1974, págs. 371-373.

Luego de las referidas enmiendas, el Artículo 14 de la Ley lee así en lo pertinente aquí:

> (c) Los poderes y facultades dispuestas en los incisos (a) y (b) de esta sección **serán ejercitables no solamente en relación con las compañías de servicio público,** porteadores por contrato, empresas de vehículos privados dedicados al comercio, personas que se dediquen al transporte turístico, según se define en esta parte y entidades que actúen como compañías de servicio público o como porteadores por contrato, **sino también con respecto a:**
>
> > (1) Toda persona o entidad que infrinja a las disposiciones de esta Parte.
> >
> > **(2) Toda persona o entidad cuyas actuaciones afecten o puedan afectar la prestación de algún servicio público.**

(3) Toda persona o entidad que lleve a cabo cualquier actividad para la cual sea necesaria obtener una autorización o endoso de la Comisión.

(4) **Toda persona o entidad cuyas actuaciones u omisiones resulten en perjuicio de las actividades, recursos o intereses en relación con los cuales la Comisión tiene poderes de reglamentación, supervisión o vigilancia.** (Énfasis suplido)

Como puede observarse, lo que dispone literalmente el Art. 14 de la Ley de Servicio Público después de las enmiendas de 1972 y 1974 es meridianamente claro. **No necesita interpretación alguna**. Igualmente claro es su historial legislativo. Por ello, es sencillamente incomprensible el decreto de la mayoría en este caso, que es absolutamente contrario al mandato expreso y a la intención del legislador, referente a dicho Art. 14. Reiteradamente hemos resuelto que cuando el lenguaje de una ley es claro y la intención legislativa es patente, este Tribunal está obligado a respetar la voluntad legislativa. No pueden los tribunales disponer algo que el legislador no intentó proveer, porque ello significaría invadir los poderes de la Asamblea Legislativa. Mun. de San Juan v. Bco. Gubernamental, 140 D.P.R. 873 (1996); Alejandro Rivera v. E.L.A., 140 D.P.R. 538 (1996). Con su decreto en el caso de autos, la mayoría de este Tribunal ignora de modo prepotente no sólo la clara voluntad legislativa sino además nuestra propia reiterada doctrina de la obligación que tenemos de respetar y acatar el mandato legislativo.

IV

Es menester señalar, además, que existe otra pieza legislativa aplicable al caso de autos, que la mayoría no trae a

colación en su decreto de autos. La transportación de agregados es objeto en Puerto Rico de una **legislación especial** que pone de manifiesto tanto la importancia particular que reviste el asunto en nuestro país, como el rol de la Comisión de Servicio Público en esta materia. Véase la Ley de Transportación de Agregados, Ley Núm. 1 de 16 de mayo de 1972, 27 L.P.R.A. secs. 2001-2014.

En esa legislación especial se destaca, *inter alia*, la jurisdicción abarcadora que se le concede a la Comisión de Servicio Público sobre todo lo relativo a la transportación de agregados en Puerto Rico. En particular, en esta legislación especial se le concede a la Comisión amplias facultades investigativas, y plenos poderes para fijar las condiciones y requisitos que estime necesario o conveniente con respecto a la transportación de agregados. 27 L.P.R.A. 2005.

De particular importancia es lo dispuesto en el Art. 1 de la legislación especial referida, 27 L.P.R.A. 2001. Allí se establece claramente que es un objetivo primordial de dicha legislación **"garantizar la supervivencia de los dedicados al transporte de agregados como medio de vida"**, finalidad cuya consecución se le asigna expresamente a la Comisión de Servicio Público.

Es evidente de lo anterior que esta otra legislación provee un firme fundamento adicional a la jurisdicción de la Comisión sobre el asunto del caso de autos. Demuestra claramente la voluntad legislativa con relación a la cuestión que nos atañe aquí, y pone de manifiesto una vez más el craso error que comete la mayoría del Tribunal al despojar a la Comisión de su autoridad sobre el asunto del caso de autos.

V

Debe enfatizarse así mismo que la Comisión desde hace mucho tiempo viene ejerciendo ya sus facultades sobre terceros cuyas actuaciones u omisiones afecten o puedan afectar los servicios que la Comisión viene obligada a proteger. Así pues en el caso Equipos de Borinquen, Inc. y Otros v. Latas de Aluminio Reynolds, Inc. y Sr. Rafael Nazario, QT-91-31-TC dicha Comisión resolvió lo siguiente:

> ". . . la Comisión no solamente reglamenta y fiscaliza las empresas de servicio público que operen en Puerto Rico sino que también interviene para resolver controversias entre dichas empresas y sus usuarios, entre concesionarios y **entre concesionarios y particulares cuyas actuaciones afecten o puedan afectar las actividades bajo nuestra jurisdicción** (Énfasis suplido)."

En efecto, la autoridad que le ha concedido el legislador y que la Comisión ha estado ejerciendo con respecto a terceros que sin ser entidades de servicio público afectan con sus actos las funciones de concesionarios de la Comisión, tiene pleno sentido jurídico y está claramente justificada. Su raciocinio radica en los principios y postulados básicos del derecho administrativo. Véase, Pérez Ríos v. Hull Dobbs, 107 D.P.R. 834 (1978). En situaciones como las del caso de autos, los porteadores públicos no tienen otro foro que pueda atender sus querellas tan adecuadamente como la Comisión. Estos porteadores públicos carecen de ordinario de recursos adecuados para la costosa litigación judicial. Ciertamente no tienen recursos comparables a los de sus adversarios corporativos. Los tribunales a su vez carecen de los remedios expeditos que tiene la agencia

administrativa; y, sobre todo, carecen del *expertise* sobre las particularidades y la dinámica operacional que tienen estos porteadores públicos en el desempeño de sus labores. Por todo ello es que el foro más afín para atender todas las cuestiones relativas a estos concesionarios de la Comisión es la propia Comisión, que tiene el cuadro completo y la perspectiva más afinada para evaluar si el porteador público ha actuado debidamente o si la prestación de sus servicios ha sido indebidamente obstaculizada. El decreto de la mayoría en este caso ofuscadamente da al traste con esta realidad jurídica sobre la naturaleza y razón de ser de los organismos administrativos, y concretamente aquí, sobre la histórica Comisión de Servicio Público y su relación con los porteadores de agregados.

VI

En resumen, no puede haber la menor duda de que la Comisión tenía una clara facultad para intervenir en el caso de autos. Raimundi era un porteador público autorizado por la Comisión a transportar los agregados que vendía Productora, lo que había constituido por décadas su principal labor como concesionario de la Comisión, y su medio de ganarse la vida. Al prohibirle a Raimundi la entrada a sus predios donde se producían los agregados que Raimundi transportaría, Productora en efecto anuló la concesión que la Comisión le había otorgado a Raimundi, y afectó la supervivencia de este transportador de agregados. La prohibición referida era precisamente una instancia de lo que el legislador quiso poner bajo la jurisdicción de la Comisión con las enmiendas a la Ley de 1972 y 1974, y con la Ley especial

sobre transportación de agregados. Además, nadie mejor que la Comisión para atender en este asunto, que es uno que atañe precisamente a su conocimiento especializado. Es por ello que el dictamen de una mayoría del Tribunal en sentido contrario aquí constituye no sólo un crudo desacato a la voluntad legislativa sino además un acto sin ningún sentido jurídico. **La mayoría sencillamente se ha abrogado un poder que no tiene, al ignorar el claro y justificado mandato de ley; y lo utiliza para descoyuntar la autoridad de la Comisión innecesariamente.**

El decreto de la mayoría, además, tiene el efecto de dejar **desamparado** a un trabajador, para favorecer los intereses de una poderosa empresa comercial. A estas alturas, la parte peticionaria no tiene ya ni un recurso judicial disponible en cuanto a los incidentes concretos del caso de autos. Una vez más una mayoría de este Tribunal decide a favor del fuerte y en contra del más débil, haciendo galas de su insólita y enrevesada concepción de lo que es justo y poniendo la autoridad de este Foro en contra de los que más necesitan su protección.

Es por todo ello que yo, DISIENTO.

Jaime B. Fuster Berlingeri
Juez Asociado